UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

HOWARD COHAN,

      Plaintiff,

v.

LVJ, INC., a Michigan
corporation,

      Defendant.

Case No. 2:20-cv-10979

Hon. Gershwin A. Drain

---

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, LVJ, Inc., doing business as Leo's Coney Island, submits the following Proposed Findings of Fact and Conclusions of Law.

## Findings of Fact

1.    Plaintiff, Howard Cohan, is a resident of Palm Beach County, Florida and a self-described "ADA Tester." (ECF No. 1 at PageID ¶¶ 3, 15) (Proposed Joint Pretrial Order, Stipulated Fact i).

2.    Defendant LVJ, Inc. is a Michigan corporation doing business as "Leo's Coney Island." Defendant operates the Leo's Coney Island restaurant at 17398 Haggerty Road in Livonia, Michigan 48152 and uses the space pursuant to a lease with Schoolcraft College. (ECF No. 1 at PageID 2, ¶ 4).

1

3.    Schoolcraft College is the owner of the property at 17398 Haggerty Road in Livonia, Michigan 48152.

4.    Defendant's "Leo's Coney Island" restaurant qualifies as a "Facility" as defined in 28 C.F.R. § 36.104. (Proposed Joint Pretrial Order, Stipulated Fact iii).

5.    Defendant's "Leo's Coney Island" restaurant is a place of public accommodation under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181(7), 28 CFR § 36.104. (Proposed Joint Pretrial Order, Stipulated Fact iv).

6.    Defendant began operating the "Leo's Coney Island" restaurant at 17398 Haggerty Road in Livonia, Michigan in 2016. Defendant was not involved in the original construction or design of the space.

7.    The Defendant's restaurant contains elements that were built or altered before March 14, 2012.

8.    Defendant's restaurant is an existing facility to which 28 C.F.R. § 36.304 is applicable.

9.    Plaintiff visited the Defendant's restaurant at 17398 Haggerty Road on March 23, 2018 and May 21, 2019.

2

10.     Plaintiff's complaint alleges that he planned to return to Michigan between August 11 and August 13, 2020 but this did not occur due to the Covid19 pandemic.

11.     Plaintiff visited the Defendant's premises during the pendency of this litigation on June 7, 2021. A receipt produced by Plaintiff indicates that he picked up a take-out order at Defendant's restaurant.

12.     During his visits to Defendant's restaurant, Plaintiff was able to enter, exit and otherwise access the Defendant's restaurant without assistance.

13.     During his visits to the Defendant's restaurant, Plaintiff was able to purchase food and otherwise afford himself of the same service and menu items available to all of Defendant's customers.

14.     Plaintiff did not require the use of a wheelchair or other mobility device during his visits to the Defendant's restaurant.

15.     Plaintiff does not currently require the use of a wheelchair for mobility.

16.     Plaintiff did not have any verbal communication with any agents or employees of Defendant prior to filing the Complaint regarding the alleged existence of architectural barriers to accessibility in the Defendant's restaurant.

17.     On April 21, 2020, Plaintiff filed this lawsuit seeking declaratory and injunctive relief under the Americans With Disabilities Act alleging that

architectural barriers exist in the Defendant's restaurant that denied Plaintiff full and equal access to the goods and services Defendant offers to non-disabled individuals. (ECF No. 1 at PageID 5, ¶ 24). Plaintiff further alleged that he personally encountered architectural barriers during his visits to the Defendant's premises on March 23, 2018 and again on May 21, 2019. (ECF No. 1 at PageID 5).

18.   Plaintiff cites 2010 ADA Standards of Accessible Design in his complaint that pertain to wheelchair accessibility intended to ensure that wheelchair bound individuals have equal access to public accommodations.

19.   Plaintiff's Complaint alleges that Defendant's restaurant violates the 2010 Standards of Accessible Design. Plaintiff's Complaint is premised solely on the 2010 Standards and Plaintiff has never sought to amend his pleadings.

20.   Plaintiff did not personally encounter barriers to wheelchair accessibility in the Defendant's restaurant because Plaintiff did not use a wheelchair or any other mobility device during his visits to the Defendant's restaurant.

21.   Plaintiff fails to show an injury-in-fact for a majority of the alleged architectural barriers in his complaint. (ECF No. 34 at PageID 666).

## <u>CONCLUSIONS OF LAW</u>

22.    None of the parties contest this Court's jurisdiction and both parties agree that the Eastern District of Michigan is the proper venue for this case.

23.    This Court has jurisdiction over this action pursuant to 42 U.S.C. § 1331 and 28 U.S.C. § 1343.

24.    Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, et. Seq., prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

25.    Under Title III of the ADA, a private citizen may only seek injunctive relief. 42 U.S.C. § 12188 (a)(2). Thus, an individual seeking injunctive relief must "show that he is under threat of suffering [an] injury in fact." *Gaylor v. Hamilton Crossing CMBS,* 582 F.Appx 576, 579 (6th Cir. 2014).

26.    Congress delegated responsibility to the Department of Justice to issue regulations consistent with guidelines put forth by the Architectural and Transportation Barriers Compliance Board, which are called "ADA Accessibility Guidelines" (ADAAG). The Department of Justice issued a set of Title III enforcement regulations in 1991 (the 1991 Standards), and the

Board issued revisions to the ADAAG in 2004. In 2010, the Department of Justice adopted the 2004 ADAAG revisions into its regulations (the 2010 Standards also referenced in Plaintiff's Complaint at ECF No. 1). Compliance with the 2010 Standards became mandatory for new construction and renovations in 2012, but prior to that date, covered entities could comply with either the 1991 or 2010 standards.

27.    Section 103 of the 2010 Standards for Accessible Design states that "[n]othing in these requirements prevents the use of designs, products, or technologies as alternatives to those prescribed, provided they result in substantially equivalent or greater accessibility and usability."

28.    Plaintiff has the burden of proof on the issue of whether the 2010 Standards for Accessible Design apply to the Defendant's restaurant in accordance with 28 C.F.R. § 36.304.

29.    The 2010 Standards became mandatory for new construction and renovations in 2012, but prior to that date, covered entities could comply with either the 1991 or 2010 standards. *Scherr v Marriott Int'l, Inc.,* 703 F.3d 1069, 1076 (7th Cir. 2013); 28 C.F.R. § 36 *et seq.*

30.    In the case of a new construction, a public accommodation must be "readily accessible" to individuals with disabilities to the extent that it is not "structurally impracticable." 42 USC § 12183(a); 28 CFR § 36.401(c)(2).

31.    Plaintiff cannot rely solely on the aesthetics of the Defendant's restaurant to support the conclusion that the 2010 Standards for Accessible Design apply.

32.    In order to meet his burden of proof under the Americans with Disabilities Act, Plaintiff must establish (1) he has a disability; (2) the defendant's facility is a place of public accommodation, and (3) the defendant discriminated against him by denying him full and equal enjoyment of services because of his disability. *Mayberry v. Von Valteir,* 843 F.Supp. 1160, 1164 (E.D.Mich. 1994).

33.    Disability is defined by the ADA as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 28 CFR § 36.105(a)(1).

34.    "Major life activities [as defined by the ADA] include, but are not limited to: (i) caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working; and (ii) the operation of a major bodily function, such as the functions of the immune system, special sense organs and skin, normal cell growth, and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine,

hemic, lymphatic, musculoskeletal, and reproductive system." 28 CFR § 36.105(c)(1).

35.    If Plaintiff establishes that he personally encountered barriers to accessibility on the defendant's premises that denied him full and equal enjoyment of the services available due to his disability, Plaintiff has the initial burden of production that removal of the alleged barriers is readily achievable.

36.    "Readily achievable" is defined by 28 CFR § 36.104 as "easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is "readily achievable favors to be considered include: (1) The nature and cost of the action needed under this part; (2) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for the safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site; (3) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity; (4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the

number, type, and location of its facilities; and (5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity. 28 CFR § 36.104.

Respectfully submitted,

GARAN LUCOW MILLER, P.C.

/s/Courtney A. Krause
Courtney A. Krause
Attorney for Defendant
1155 Brewery Park Blvd. Ste 200
Detroit     MI     48207
(313) 446-5522
ckrause@garanlucow.com
Dated: June 1, 2022                         P70581

## **CERTIFICATE OF SERVICE**

By my signature below, I certify that a true and correct copy of this document was served on all counsel of record on June 2, 2022 in accordance with the Federal Rules of Civil Procedure.

/s/Courtney A. Krause
Courtney A. Krause